IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2007

## JEFFREY HOPKINS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Tipton County**
**No. 4834     Joseph H. Walker, III, Judge**

_____

**No. W2007-00288-CCA-R3-PC  - Filed December 3, 2007**

_____

The petitioner, Jeffrey Hopkins, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel was ineffective for failing to file a motion to suppress his confession. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

J. Barney Witherington, IV, Covington, Tennessee, for the appellant, Jeffrey Hopkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2004, the petitioner was convicted by a Tipton County jury of first degree felony murder and especially aggravated robbery based on the December 20, 2003, shooting death and robbery of his roommate, Ricky Lumpkin. He was subsequently sentenced to life imprisonment with the possibility of parole for the felony murder conviction and to twenty years for the especially aggravated robbery conviction. The petitioner's convictions were affirmed by this court on direct appeal and our supreme court denied his application for permission to appeal. State v. Jeffrey Hopkins, No. W2004-02384-CCA-R3-CD, 2005 WL 2349061, at *1 (Tenn. Crim. App. Sept. 23, 2005), perm. to appeal denied (Tenn. Feb. 27, 2006).

We summarized the facts underlying the convictions in our direct appeal opinion:

In the light most favorable to the state, the evidence at trial showed that the [petitioner] shot his male roommate, Ricky Lumpkin, staged the crime scene to give the appearance that the victim had committed suicide, and then gathered the victim's puppy and cellular telephone and drove away in the victim's truck. The [petitioner] was apprehended nine days after the shooting in Horn Lake, Mississippi.

Id.

On September 29, 2006, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. He alleged a number of different instances of ineffective assistance of counsel in his petition and at the evidentiary hearing, but on appeal confines himself to arguing that trial counsel was ineffective for failing to suppress his statement to police.

Post-conviction counsel was appointed and an evidentiary hearing held on January 11, 2007. The petitioner testified that trial counsel met with him only two or three times, for five to ten minutes each time, during the eight months prior to trial. He said that he and counsel discussed the theory of defense, which partially consisted of showing the abuse he had suffered at the hands of the victim and the argument and physical fight that had led to the killing. In his opinion, however, counsel failed to adequately emphasize these points at trial.

The petitioner testified that during counsel's second visit he asked him to suppress his statement, informing him that he had been under the influence of drugs at the time of his arrest. He said counsel told him he would but never followed through on his promise. According to the petitioner, he was under the influence of heroin at the time he gave his statement and had been held for ten hours in an interrogation room without food or water. He said counsel never explained to him why he did not file a motion to suppress the statement.

On cross-examination, the petitioner acknowledged that the points he believed should have been emphasized at trial, that he had been sexually abused by the victim and that they had been involved in a fight before the killing, were included in his statement. He further acknowledged that the State had other evidence of his guilt, including a videotape showing him in the victim's vehicle with the victim's puppy some twelve hours after the killing, his bloody fingerprint on one of the staged suicide notes, and his admission to the killing in several telephone conversations he had with a Tennessee Bureau of Investigation investigator prior to his formal statement.

Trial counsel testified that he was the assistant public defender assigned to represent the petitioner in the case. He said he did not file a motion to suppress the petitioner's statement because he believed that it afforded the best opportunity of presenting the petitioner's version of the killing to the jury. He explained:

Yes. Everything that was in his statement tended to explain things rather than confess, especially with regard to a felony murder situation. Basically those are the

matters we were going to emphasize through witnesses at trial. This was one way to get that before the jury, being able to have him testify by means of his statement.

Then at the point in time at which we determined whether or not he would take the stand, we would have the option open, having had that evidence already before the Court and before the jury, as to whether or not he would take the stand or not take the stand. He would not be -- face cross-examination since the State in essence had put forward the thrust of his defense with regard to the felony murder.

Trial counsel testified that there were things in the statement, such as the history of sexual abuse at the hands of the victim, which the petitioner might not have been able to get in front of the jury through his testimony alone. He said the petitioner ultimately decided to testify in his own defense because there were a few matters that he wanted to "flesh out" for the jury in order to explain his actions. He stated that the petitioner's position was that he had no intention of taking the victim's property at the time of the killing and that his actions in taking the puppy and vehicle were afterthoughts. Trial counsel testified that he argued this position to the jury. He said there was no dispute that the petitioner had committed the killing.

On January 11, 2007, the post-conviction court entered an order denying the petition for post-conviction relief. Among other things, the court found that counsel's decision not to file a motion to suppress the statement was part of a sound trial strategy and that the petitioner could not show any prejudice as a result of counsel's failure to suppress the statement.

## ANALYSIS

### Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

### Ineffective Assistance of Counsel

The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999). To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient

performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We conclude that the record fully supports the post-conviction court's finding that the petitioner failed to show he was denied the effective assistance of counsel. On appeal, the petitioner bases his ineffective assistance claim solely on counsel's failure to file a motion to suppress his statement. Trial counsel, however, explained that the statement helped the petitioner's defense, in that it enabled the petitioner to get before the jury his allegations of mistreatment at the hands of the victim and the fact that he had no intention of taking the victim's property at the time of the killing. There is nothing to show that this was not a legitimate trial tactic on the part of counsel. Moreover, the petitioner cannot show that he was prejudiced as a result of counsel's failure to file a motion to

suppress the statement. Even without the formal statement, the State had overwhelming evidence of the petitioner's guilt, including his bloody fingerprint on one of the staged suicide notes and his earlier admission to a law enforcement officer, via telephone, that he had committed the crimes.

## **CONCLUSION**

We conclude that the petitioner has not met his burden of showing that he is entitled to post-conviction relief from his convictions. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE